IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| LAWRENCE ESTEP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  09-3199 |
| | ) | |
| WORLD FINANCE CORPORATION | ) | |
| OF ILLINOIS, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION

This matter is before the Court on a Motion to Compel Arbitration of Plaintiff's Claims and Stay Proceedings (d/e 13) filed by Defendant World Finance Corporation of Illinois (World Finance). World Finance seeks an order compelling Plaintiff Lawrence Estep to submit his claims to arbitration on an individual basis. World Finance also asks the Court to stay the instant matter until arbitration is concluded. For the reasons set forth below, Defendant's Motion is allowed.

## BACKGROUND

Estep's claims arise out of a consumer loan that Estep obtained from a World Finance office in Springfield, Illinois, on October 20, 2008. Estep financed $300.00 at an annual percentage rate of 145.52%. He executed a document entitled "Loan Repayment and Security Agreement and Disclosures Required by State and Federal Law" (Loan Agreement), in which he agreed to make seven monthly payments of $66.00 for a total amount of $462.00. Defendant's Memorandum in Support of Motion to Compel

1

<u>Arbitration of Plaintiff's Claims and Stay Proceedings (d/e 14) (Defendant's Memorandum)</u>, Ex. 1.[1] Estep also executed a document titled "Agreement to Settle Disputes by Arbitration" (Arbitration Agreement) in connection with the loan transaction. <u>Id</u>., Ex. 2.[2]

The Arbitration Agreement provides as follows:

1. EXCEPT AS PROVIDED IN PARAGRAPH NUMBER 2, ALL DISPUTES, CONTROVERSIES OR CLAIMS OF ANY KIND AND NATURE BETWEEN LENDER AND BORROWER ARISING OUT OF OR IN CONNECTION WITH THE LOAN AGREEMENT, OR ARISING OUT OF ANY TRANSACTION OR RELATIONSHIP BETWEEN LENDER AND BORROWER OR ARISING OUT OF ANY PRIOR OR FUTURE DEALINGS BETWEEN LENDER AND BORROWER, SHALL BE SUBMITTED TO SINGLE ARBITRATION AND SETTLED BY SINGLE ARBITRATION IN ACCORDANCE WITH THE UNITED STATES ARBITRATION ACT, THE EXPEDITED PROCEDURES OF THE COMMERCIAL ARBITRATION RULES OF THE AMERICAN ARBITRATION ASSOCIATION (THE "ARBITRATION RULES OF THE AAA"), AND THIS AGREEMENT. JUDGMENT UPON THE AWARD RENDERED BY THE ARBITRATOR MAY BE ENTERED IN ANY COURT HAVING JURISDICTION THEREOF, SUCH ARBITRATION SHALL BE CONDUCTED BY A PANEL OF ONE (1) ARBITRATOR SELECTED IN ACCORDANCE WITH THE ARBITRATION RULES OF THE AAA.

Disputes covered under the above include but are not limited to:
. . .
● any claim based upon a federal or state statute including, but not limited to, the Truth-in-Lending Act and Regulation Z; the Equal Credit Opportunity Act and Regulation B, state insurance laws, state usury and lending laws including state consumer protection statutes and regulations;

---

[1] Estep attached only the first page of the Loan Agreement to his Complaint as Ex. A. However, he does not contest that the document is in fact two pages as represented in Defendant's Memorandum, Ex. 1.

[2] Estep attached only the first page of the Arbitration Agreement to his Complaint as Ex. C. Again, he does not contest that the document is in fact two pages as represented in Defendant's Memorandum, Ex. 2.

2

. . . .

<u>Defendant's Memorandum</u>, Ex. 2, p. 1. Paragraph 2 of the Arbitration Agreement provides as follows:

> 2. Notwithstanding this Agreement, in the event of a Default under the Loan Agreement, Lender may seek its remedies in an action at law or in equity, including but not limited to, judicial foreclosure or repossession. Lender may also exercise its other remedies provided by law (such as, but not limited to, the right of self-help repossession under Article 9 of the Uniform Commercial Code or other applicable law and/or the foreclosure power of sale). This section shall not constitute a waiver of Lender's rights thereafter to seek specific enforcement of its rights under this Agreement in the event Borrower shall assert a counterclaim or right of setoff in such judicial or non-judicial action.

<u>Id</u>.

Estep alleges in his Complaint (d/e 1) that World Finance violated the Truth in Lending Act, 15 U.S.C. § 1638, and Regulation Z, 12 C.F.R. § 226.18 (Count I) and the Illinois Interest Act, 815 ILCS 205/4(1) (Count II) in connection with the October 2008 transaction. Estep also seeks a declaration that the Arbitration Agreement is invalid (Count III). World Finance asks the Court to stay these proceedings and compel arbitration of Estep's claims based on the Arbitration Agreement.

## ANALYSIS

The Federal Arbitration Act mandates that, as a matter of federal law, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Seventh Circuit instructs as follows: "Under the Federal Arbitration Act, arbitration may be compelled if the following three elements are shown: a written agreement to arbitrate,

3

a dispute within the scope of the arbitration agreement, and a refusal to arbitrate." Zurich American Ins. Co. v. Watts Industries, Inc., 417 F.3d 682, 687 (7th Cir. 2005). It is clear that these three elements are present in the instant case. The Arbitration Agreement, which was signed by both Estep and a representative from World Finance, constitutes a written agreement to arbitrate. Estep's claims fall within the broad scope of the Arbitration Agreement, which covers all claims of any kind or nature arising out of the Loan Agreement. In fact, the Arbitration Agreement expressly includes as covered disputes claims based on the Truth-in-Lending Act, Regulation Z, and state usury and lending laws. It is undisputed that Estep refuses to arbitrate his claims. Thus, the resolution of the pending Motion turns on the applicability of contract defenses.

Estep argues that the Arbitration Agreement is unenforceable because it is unconscionable and impossible to perform. The Court addresses each of these arguments in turn. According to Estep, the Arbitration Agreement is unconscionable because it allows World Finance "to pursue any relief it wants in a court of law, while generally requiring consumers to seek relief in arbitration." Plaintiff's Response to Motion to Compel Arbitration (d/e 16) (Plaintiff's Response), p. 2. At the outset, the Court notes that Estep's characterization of the Arbitration Agreement is overly broad. The Arbitration Agreement expressly limits World Finance's ability to seek redress in court to cases involving a default under the Loan Agreement. Defendant's Memorandum, Ex. 2, p. 1. However, the Court recognizes that claims involving an alleged default would be the primary type of claim raised by World Finance.

In making his unconscionability argument, Estep relies heavily on a New Mexico Supreme Court case, Cordova v. World Finance Corporation of New Mexico, which held an arbitration agreement, identical in relevant part to the one at issue here, unconscionable and unenforceable under New Mexico law. Cordova, 208 P.3d 901, 910 (N.M. 2009). Under New Mexico law, "[c]ontract provisions that unreasonably benefit one party over another are substantively unconscionable." Id. at 908 (citing Padilla v. State Farm Mut. Auto. Ins. Co., 68 P.3d 901 (N.M. 2003). According to the Cordova Court, an arbitration provision limiting a borrower to mandatory arbitration as a forum to settle any and all disputes, but reserving for the lender the option to access the courts for remedies the lender is most likely to pursue is so inherently one-sided that it is substantively unconscionable in violation of New Mexico public policy.

As the parties recognize, Illinois law governs the instant case. Estep asserts that the definition of unconscionability applied in Cordova was similar to that employed by the Illinois Supreme Court in Kinkel v. Cingular Wireless LLC, 857 N.E.2d 250, 267 (Ill. 2006). In Kinkel, the plaintiff filed suit individually, and on behalf of a class of those similarly situated, against Cingular Wireless challenging an early-termination fee included in Cingular's standard cellular telephone service agreement as well as a contractual ban on class treatment of claims related to the service agreement. According to Kinkel, the early termination fee constituted an illegal penalty, a breach of the underlying service agreement, and statutory fraud under the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 et seq. Cingular moved to compel arbitration. The trial court denied Cingular's motion, holding that the arbitration clause

was unconscionable and unenforceable. On interlocutory appeal, the Illinois Appellate Court concluded that the class action waiver included in the arbitration provision was both procedurally and substantively unconscionable, but that the waiver was severable from the remainder of the arbitration clause. The appellate court determined that the remainder of the arbitration provision should be enforced, "in keeping with the strong policy in favor of enforcing arbitration agreements." Id. at 255 (internal quotations and citation omitted). Thus, under the appellate court ruling, Cingular was entitled to demand arbitration of Kinkel's individual claim, but could not preclude arbitration of her class claim. Id. at 263.

The Illinois Supreme Court granted Cingular's petition for leave to appeal to determine whether the prohibition on class arbitration was unconscionable. Because Kinkel did not seek review of the appellate court ruling on the enforceability of the arbitration clause itself, that issue was not before the Illinois Supreme Court. Kinkel, 857 N.E.2d at 264. The Illinois Supreme Court determined that the class action waiver raised a degree of procedural unconscionability because it did not inform Kinkel that she would have to pay anything toward the cost of arbitration, but that this procedural unconscionability alone was insufficient to render the class action waiver unenforceable. Thus, the Court turned its attention to the question of substantive unconscionability. The Kinkel Court deemed the following definition of substantive unconscionability to be "apt":

> Substantive unconscionability concerns the actual terms of the contract and examines the relative fairness of the obligations assumed. Indicative of substantive unconscionability are contract terms so one-sided as to

>oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.

Id. at 265 (internal quotations and citations omitted). Analyzing these factors, the Court determined that the class action waiver was unconscionable. The Court specifically cited the following circumstances in making this determination: "a contract of adhesion that requires the customer to arbitrate all claims, but does not reveal the cost of arbitration, and contains a liquidated damages clause that allegedly operates as an illegal penalty." Id. at 274-75. The Court concluded that "[t]hese provisions operate together to create a situation where the cost of vindicating the claim is so high that the plaintiff's only reasonable, cost-effective means of obtaining a complete remedy is as either the representative or a member of a class." Id. at 275.

As previously noted, the enforceability of the arbitration clause as a whole was not at issue in Kinkel. Defendant argues that courts applying Illinois law have rejected the notion that an arbitration agreement is unconscionably one-sided if it contains obligations to arbitrate that are not identical. See Defendant's Reply Memorandum in Support of Motion to Compel Arbitration of Plaintiff's Claims and Stay Proceedings (d/e 20) (Defendant's Reply), p. 3-4 (citing cases). Estep asserts that Defendant's cited cases are unpersuasive because they predate Kinkel and, furthermore, that courts applying Illinois law have found fault with arbitration agreements that require one side to arbitrate but allow the other to litigate, citing Vassilkovska v. Woodfield Nissan, Inc., 830 N.E.2d 619 (Ill. App. 2$^d$ Dist. 2005), and Gonzalez v. West Suburban Imports, Inc., 411 F.Supp.2d 970 (N.D. Ill. 2006).

The Court turns first to <u>Vassilkovska</u> and <u>Gonzalez</u>, which, like the cases cited by Defendant, pre-date <u>Kinkel</u>. An arbitration agreement, like any contract, must be supported by valid consideration. Unlike the present case, both <u>Vassilkovska</u> and <u>Gonzalez</u> involved arbitration agreements which were deemed to be stand-alone agreements. In cases involving stand-alone arbitration agreements, often, the consideration for one party's promise to arbitrate is the other party's promise to do the same. The Vassilkovska Court determined that the stand-alone arbitration agreement lacked consideration because it contained no promise by defendant to submit to arbitration. <u>Vassilkovska</u>, 830 N.E.2d at 625. The Gonzalez Court, citing <u>Vassilkovska</u>, reached the same conclusion. <u>Gonzalez</u>, 411 F.Supp.2d at 971-72.

Thus, <u>Vassilkovska</u> and <u>Gonzalez</u> support the proposition that if only one party to a stand-alone arbitration agreement is bound to arbitrate its claims, the promise to arbitrate is illusory and does not constitute valid consideration. This proposition is inapplicable to the instant case because the Arbitration Agreement at issue here is not a stand-alone agreement, but rather it is incorporated by reference into the Loan Agreement, which provides valid consideration. <u>See, e.g.</u>, <u>Cook v. River Oaks Hyundai, Inc.</u>, 2006 WL 931685, at *2 (N.D. Ill. April 5, 2006). Cases applying Illinois law have consistently held that, where other valid consideration is present, a mutual promise to arbitrate need not be an equal promise. See <u>Molton, Allen & Williams, LLC v. Continental Cas. Ins. Co.</u>, 2010 WL 780353, at *5-6 (N.D. Ill. Mar. 3, 2010) (collecting cases).

In examining the relative fairness of the obligations assumed by the parties in the instant case, the Court does not believe that the agreement to arbitrate is unconscionable.  The Court must apply the definition of unconscionability set out in Kinkel, rather than the one employed by the Cordova Court.  As the Kinkel Court noted, indicia of unconscionability include contract terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance in the obligations and rights imposed by the bargain, and significant cost-price disparity.  Kinkel, 857 N.E.2d at 265.  The present case is devoid of such factors, especially in light of Illinois precedent establishing that the promise to arbitrate need not be an equal one.  The Arbitration Agreement is not unconscionable under Illinois law.

Estep further asserts that a moratorium on consumer arbitrations by the American Arbitration Association renders performance of the Arbitration Agreement impossible.  According to Estep, the American Arbitration Association is the only organization authorized to handle arbitrations under the Arbitration Agreement.  Estep asserts that the American Arbitration Association will not arbitrate a consumer dispute like his unless the arbitration agreement allows the consumer to sue in small claims court and the consumer consents to arbitration after the dispute arises.  These arguments are unpersuasive.

At the outset, Estep mischaracterizes the terms of the Arbitration Agreement. The Agreement provides that arbitration shall be conducted in accordance with the arbitration rules of the American Arbitration Association and that the arbitrator shall be selected in accordance with the rules of the American Arbitration Association, but it does

9

not require that arbitration be conducted by the American Arbitration Association.

Additionally, the record fails to establish that the American Arbitration Association will refuse to administer arbitration. Estep provides detailed background on a current moratorium on new consumer arbitrations by the American Arbitration Association. Plaintiff's Response, p. 5-6 & Ex. E. However, the moratorium, by its express, undisputed terms, does not apply to the instant case. The moratorium covers "consumer debt collections programs or bulk filings and individual case filings in which the company is the filing party and the consumer has not agreed to arbitrate at the time of the dispute . . . ." Id., Ex. E, p. 1. Here, Estep, not World Finance, would be the filing party in the arbitration. As Estep recognizes, the American Arbitration Association continues to administer all demands for arbitration filed by consumers against businesses. Id., p. 6 & Ex. E, p. 1. Estep further asserts that arbitration is precluded because the Arbitration Agreement does not comply with the American Arbitration Association's Consumer Due Process Protocol. Estep fails to provide any evidence to establish that the American Arbitration Association would refuse to conduct arbitration for this reason under the facts of this case. This is a determination that should be left to the arbitrator in the first instance. In the event that arbitration is denied based on failure to comply with the Consumer Due Process Protocol, the matter may be referred back to this Court. See Ragan v. AT&T Corp., 824 N.E.2d 1183, 1194 (Ill.App. 5th Dist. 2005) (applying New York law but recognizing availability of return to court in the event arbitration is refused). Therefore, an order compelling arbitration of Estep's claims is appropriate.

Defendant asserts that, under the Arbitration Agreement, Estep's claims must be arbitrated on an individual, rather than a class, basis. Defendant's Memorandum, p. 7-8. Estep responds by arguing that, in the event the Court denies the Motion to Compel Arbitration, the Court should find that the case may proceed as a class action. Plaintiff's Response, p. 12. Estep's argument fails to recognize that, pursuant to the Stipulation as to Pending Motions (d/e 15), Plaintiff's Motion for Class Certification (d/e 10) was withdrawn without prejudice, with leave to refile after resolution of the instant Motion to Compel. See Text Order, dated October 14, 2009. Thus, the question of whether the instant case may proceed as a class action is not properly before the Court. To the extent Estep asserts that the class action waiver is unconscionable as it relates to the arbitration, his argument is unpersuasive. As the Illinois Supreme Court expressly recognized, Kinkel does not hold that class action waivers are per se unconscionable. Kinkel, 857 N.E.2d at 278. Rather, "[t]he unconscionability of class action waivers must be determined on a case-by-case basis, considering the totality of the circumstances." Id. Unlike Kinkel, under the Arbitration Agreement in the instant case, World Finance agreed to advance all costs of arbitration, up to a maximum of eight hours of proceedings. Additionally, both the Truth in Lending Act and the Illinois Interest Act allow a prevailing plaintiff to recovery attorney's fees and costs. See 15 U.S.C. § 1640(a)(3); 815 ILCS 205/6. Under the applicable arbitration rules, the arbitrator may grant any remedy or relief the parties could have obtained in court. Defendant's Reply, Ex. 2, p. 6, §C-7(c). Thus, the instant case does not present a situation where enforcement of a class action waiver would preclude a cost-effective mechanism for an individual to obtain a remedy for the

specific injuries alleged.  See id. at 274-76.

Finally, Defendant asks the Court to stay the instant litigation pending the completion of arbitration.  As the Seventh Circuit has consistently noted, "'the proper course of action when a party seeks to invoke an arbitration clause is to stay the proceedings rather than to dismiss outright.'"  Halim v. Great Gatsby's Auction Gallery, Inc., 516 F.3d 557, 561 (7th Cir. 2008) (quoting Cont'l Cas. Co. v. Am. Nat'l Ins. Co., 417 F.3d 727, 732 n. 7 (7th Cir. 2005)).  Therefore, Defendant's request for a stay is allowed.

## CONCLUSION

THEREFORE, the Motion to Compel Arbitration of Plaintiff's Claims and Stay Proceedings (d/e 13) is ALLOWED.  This case is stayed pending arbitration.  The parties are directed to file status reports on or before December 31, 2010, and every six months thereafter while the stay is in force.

IT IS THEREFORE SO ORDERED.

ENTERED this 16th day of August, 2010

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE